**UNITED ANCIENT ORDER OF DRUIDS, COLUMBUS GROVE NO. 10, Appellant, v. BOARD OF LIQUOR CONTROL, Appellee.**

Ohio Appeals, Tenth District, Franklin County.

No. 6279.   Decided March 29, 1960.

V. J. Kertzinger, Columbus, for appellant.

Mark McElroy, Atty. Genl., Michael Kouskouris, Asst. Atty. Genl., Columbus, for appellee. •

(McLAUGHLIN, J, of the Fifth District, sitting by designation in the Tenth District.)

## OPINION

By BRYANT, PJ.

This is an appeal on questions of law and fact filed by United Ancient Order of Druids, Columbus Grove No. 10, appellant, seeking to reverse a judgment of the Court of Common Pleas of Franklin County, Ohio, on appeal from the Board of Liquor Control, appellee, finding that the order of the Board was supported by reliable, probative and substantial evidence, was in accordance with law and should be affirmed.

At the outset, we note that the appeal in this case is from an order of the Board finding appellant, the holder of a Class D-4 or private club liquor permit, guilty of hindering an inspection of the premises contrary to §4301.66 R. C., and also Regulation No. 62 of the Board. We also note that after finding the permit holder guilty, the Board imposed a suspension of twenty-one days, all of which, as we have said, was affirmed by the court below.

It therefore follows that this is not one of the ten classes of actions described in §2501.02 R. C., and hence cannot be appealed on questions of law and fact as was attempted here. It also follows that the motion by the Board to reduce to an appeal on questions of law only must be sustained.

The brief of appellant contains no assignment of error as such but may fairly be said to contend that the order of the Board is not supported by and is contrary to the weight of the evidence and that the court below was in error in so holding.

There are of course many ways of hindering an inspection. Destroying the evidence is but one.

The conclusions reached by the court below as set forth on page five (opinion by Leach, J.) are as follows:

"From a consideration of all of the facts herein, and from a weighing of all of the evidence as required of us by the case of **Andrews v. Board of Liquor Control, 164 Oh St 275,** we conclude that the order of the Board of Liquor Control is supported by reliable, probative and substantial evidence and is in accordance with law. We conclude as a matter of fact that Mr. Sherrod did pull the inner door shut after he had been shown the badges of the liquor investigator and an accompanying policeman; that at such time Mr. Sherrod did have in his possession keys which would unlock such door, but, with the intent of delay, Mr. Sherrod wrongfully· informed the investigator and the police officer that re-admittance or admittance into the inner room could only be obtained by pushing the buzzer and having someone, who happened to be inside, open the door for them; that such act was in violation of Regulation No. 62 in that Mr. Sherrod failed to immediately admit such investigator and was in violation of §4301.66 R. C., in that such act was intended to hinder or obstruct the inspection of the permit premises and did in fact so hinder and obstruct the inspection of the same."

We cannot say as a matter of law that the court below was wrong in so holding. It follows that the judgment of the court below must be affirmed as well as that of the Board.

McLAUGHLIN, J, concurs.
DUFFY, J, dissents.

## DISSENTING OPINION
By DUFFY, J.

The record of proceedings and testimony before the Liquor Board indicates that some investigators from the Liquor Department and some members of the Columbus Police Department went to the club room of the "United Ancient Order of Druids, Columbus Grove No. 10," located at 964 South High Street, in the city of Columbus, Ohio, on the morning of September 7, 1958, at approximately 2:20 A. M. One of the investigators for the Liquor Department went to a window and looked into the room where he could observe a waitress and some people sitting at a bar. Another investigator and a police sergeant went to the door and pressed the button and the manager came out. They asked him if he wouldn't let them in as they wanted a drink. He told them that it was a social club and that only members could be admitted, and asked whether or not they had a membership card. They tried to prevail upon him to admit them without a card and he refused. This conversation took place between the outer door to the house and the inner door to the club room.

Within a minute's time, it is testified, the investigator and the police sergeant showed their badges and said they wanted in; the manager stated they would have to push the buzzer to get in; the manager was kept from pushing the button and placed under arrest; the button was pushed by one of the investigators, and they testified they heard a commotion inside and that they heard a woman's voice say "Clear the bar" and then they broke down the door leading into the club room.

The permit holder was charged with selling and/or allowing intoxicating liquor to be consumed in and upon the permit premises in violation of the provisions of the Liquor Control Act and regulations of the Board of Liquor Control, and was also charged with the violation of preventing, hindering, and obstructing investigators of the Department of Liquor Control from making an inspection of the permit premises, while in the lawful performance of their duty—in violation of the law and regulations of the Board of Liquor Control.

The Board dismissed the first violation as to the sale and consumption of intoxicating liquor for lack of evidence, but found the allegations of the second charge to be well taken and suspended the permit for 21-days.

It is clear from the record that one of the Liquor Department investigators testified he was looking in the window and was able to observe what was going on in the room where the Druids had the bar and club room, and was unable to offer any testimony of any wrong doing at the time. In spite of this the other investigators and police rang the doorbell and sought admission, trying to get the manager to sell them a drink in violation of the law, and when they were refused they then showed their badges and were promptly told how to get in.

The investigators' testimony is that within a minute after showing their badges they broke down the door and if there was any hindering, preventing or obstructing of the investigators it had to take place within a minute's time. We do not believe the mere fact that keys

were found on his possession, during a search of his person later, is evidence of hindering, obstructing or preventing. There is also conflicting evidence concerning the time at which the manager shut the inner door, but the police sergeant testified that it was open until they showed him their credentials. Surely if they were there only for an inspection of the premises they had ample opportunity during the three or four minutes that they talked to the manager trying to persuade him to let them in without a membership card, to initiate their inspection. However, the other investigators testified that the door was shut during all of the preliminary conversation having to do with the admission by membership card only.

In view of the fact that one liquor inspector was able to observe the conduct of the members through the window and because of the lack of any evidence indicating any desire to make an inspection of the premises, I believe the decision of the Board in regard to the second charge of hindering, obstructing and preventing an inspection by the liquor agents was not supported by reliable, probative or substantial evidence, and for the above reasons dissent from the opinion of the majority.